UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Carl Green, et al.,

                Plaintiffs,              Court File No. 14-cv-4856 (SRN/LIB)

v.                              **REPORT AND RECOMMENDATION**

Gordon Ramsey, et al.,

                Defendants.

This matter came before the undersigned United States Magistrate Judge upon Plaintiff Carl Green's ("Plaintiff") Motion to Amend the Complaint, [Docket No. 44]; and Defendant AAA Ventures, Inc. (Defendant "AAA") Motion to Dismiss, [Docket No. 25]. Defendant AAA's Motion to Dismiss, [Docket No. 25], has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, for a report and recommendation. (Order of Referral, [Docket No. 32]). The Court held a motions hearing on June 25, 2015.

For reasons outlined below, the Court will recommend **GRANTING in part** and **DENYING in part** Defendant AAA's Motion to Dismiss, [Docket No. 25].[1]

## I.    BACKGROUND

On November 25, 2014, Plaintiff initiated this action by filing a *pro se*[2] complaint, alleging: (1) a claim under 42 U.S.C. § 1983, that all Defendants had violated Plaintiff's right to equal protection; (2) a claim that all Defendants had racially discriminated against Plaintiff by interfering with his ability to make and enforce contracts under 42 U.S.C. § 1981; and, (3) a

---

[1] The Court has addressed Plaintiff's Motion for Leave to Amend the Complaint, [Docket No. 44], in a separate Order.

[2] Because Plaintiff is proceeding *pro se*, the Court must read the content of his pleadings liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed'") (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

claim under 42 U.S.C. § 1985(3), that Defendant Gordon Ramsey and Defendant Allen Butler, Jr., had conspired for the purpose of depriving Plaintiff of his civil rights.

On May 5, 2015, Defendant AAA filed the present Motion to Dismiss, [Docket No. 25]. On June 11, 2015, Plaintiff filed a Motion for Leave to Amend the Complaint, [Docket No. 44], and a Proposed First Amended Complaint, [Docket No. 44-1]. In his Proposed First Amended Complaint, [Docket No. 44-1], Plaintiff alleged: (1) a claim that all Defendants had violated his rights under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, and 42 U.S.C. § 1982; (2) a claim that all Defendants had racially discriminated against Plaintiff by interfering with his ability to make and enforce contracts under 42 U.S.C. § 1981; and, (3) a claim under 42 U.S.C. § 1985(3), that Defendant Ramsey and Defendant Butler had conspired for the purpose of depriving Plaintiff of his civil rights. (Proposed First Amended Complaint, [Docket No. 44-1]).

After the Defendants had submitted their memoranda in opposition to Plaintiff's Motion for Leave to Amend the Complaint, [Docket No. 44], the Plaintiff filed a Reply, [Docket No. 52], to which he attached a Second Proposed Amended Complaint, [Docket No. 53]. In his Proposed Second Amended Complaint, [Docket No. 53], Plaintiff alleges: (1) a 42 U.S.C. § 1983 claim that all Defendants violated Plaintiff's rights under the FHA and 42 U.S.C. § 1982; (2) a claim that Defendants AAA and Butler had violated Plaintiff's rights to make and enforce contracts under 42 U.S.C. § 1981; and (3) a claim under 42 U.S.C. § 1985(3), that Defendants Ramsey and Butler had conspired for the purpose of depriving Plaintiff of his civil rights. Plaintiff also sought to add new factual allegations and references to legal authority to support his proposed section 1983 claims of violations of the FHA and section 1982. (See generally, Id.).

On August 5, 2015, the Court issued an Order granting in part and denying in part Plaintiff's Motion to Amend. (August 5, 2015, Order, [Docket No. 55]). As relevant to the motion now before the Court, the Court denied Plaintiff leave to amend his original Complaint, [Docket No. 1], to assert a section 1983 claim under Count I based on alleged violations of the Fair Housing Act ("FHA") and 42 U.S.C. § 1982. In addition, because Plaintiff had not re-alleged the section 1983 claim under Count I from his original Complaint, [Docket No. 1], in his Proposed Second Amended Complaint, [Docket No. 53], the Court deemed Plaintiff to have abandoned this claim to the extent it was based on an alleged equal protection violation. The Court granted Plaintiff leave to add new factual allegations and to withdraw his claims under Count II against all Defendants except Defendant AAA and Defendant Butler. Accordingly, the Court ordered Plaintiff to file and serve an amended complaint that was substantially in the format of the Proposed Second Amended Complaint, [Docket No. 53], but which, in relevant part, did not contain Plaintiff's section 1983 claim based on either an alleged violation of the Equal Protection Clause, violation of the FHA, or 42 U.S.C. § 1982.

## II.  STATEMENT OF ALLEGED FACTS[3]

In his original Complaint, [Docket No. 1], Plaintiff alleges the following:

Wessman Estate, LLC, did business as Twins Bar, a night club in Duluth. (Id. at 6, ¶¶ 26, 28). Wessman Estate, LLC, was granted a liquor license, a limited food license, and a dance

---

[3]Many of Plaintiff's allegations in his original complaint and Proposed Second Amended Complaint, [Docket No.53], are statements of mere legal conclusions for which Plaintiff has not alleged any specific supporting facts and which simply conclusorily restate elements of claims of unlawful discrimination. See, e.g., Complaint, [Docket No. 1], 10 ¶ 49 ("Green rejected the requirement as disparate impact on him and the business due to racial profiling and discrimination based on the custom or policy in the meeting and revised security plan."). Defendant AAA moves to dismiss on the basis that Plaintiff has failed to state claims upon which relief may be granted. Accordingly, the standard the Court must use in ruling on a motion to dismiss for failure to state a claim does not require the Court to accept unsupported statements of legal conclusions as true. Silver v. H&R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997) ("In considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences." (citing In re Syntex Corp. Securities Lit., 95 F.3d 922, 926 (9th Cir. 1996)).

3

license by the City of Duluth. (Id.). Plaintiff Carl Green is the assignee of Wessman Estate, LLC. (Id.). Most Defendants are municipal officials of the City of Duluth and include Chief of Police Ramsey, Deputy Chief of Police Tusken, Duluth Police Department Lieutenant Rush, tax and tourism official Grace, Mayor Ness, and city councilor Gardener. (Id. at ¶ 27). The remaining two Defendants are Defendant AAA, a Minnesota business and detective agency, and Defendant Allen Butler, Jr., a retired police officer who does business under the name "Butler Security." (Id. at ¶¶ 23-24).

In November of 2013, Plaintiff maintains that an officer of the Duluth Police Department asked him to cancel the entertainment that had previously been scheduled to take place at Twins Bar on December 19, 20, 30, and 31, 2013. (Id. at 8-9, ¶ 38). Plaintiff refused to do so. (Id. at 9, ¶ 39).

On December 19, 2013, Plaintiff says he met with Defendant Tusken, Defendant Rush, and five other Duluth police officers at the Duluth Police Department to discuss the entertainment that Plaintiff had scheduled to take place at Twins Bar later that evening. (Id. at ¶¶ 40-42). Plaintiff maintains he believed that the purpose of the meeting was to discuss a security plan for the entertainment event scheduled at Twins Bar and, at the meeting, he alleges he offered a written proposed security plan for the event that was based on "the custom or policy of the police department of the City of Duluth for bars that use in-house security." (Id. at ¶ 43).

Defendants Tusken and Rush are alleged to have rejected Plaintiff's proposed security plan, stating that it was a condition of obtaining an annual dance license that a licensee provide adequate security personnel, and that Plaintiff was not excused, as a new business owner, from observing that requirement. (Id. at ¶¶ 44-45). Plaintiff asserts "[t]he code required the licensee to obtain the Police chief's approval of the security plan and [Plaintiff] was told the chief of

4

police was requiring five officers or agents." (Id. at ¶ 46). Defendants Tusken and Rush are further alleged to have told Plaintiff that he was required to hire five security personnel for the Twins Bar entertainment event. (Id. at 10, ¶ 48). Because he believed that the requirement that Twins Bar hire five security personnel for entertainment events was the product of racial discrimination, the Plaintiff initially rejected the requirement. (Id. at ¶ 49). Plaintiff also alleges that he provided information to Defendants Tusken and Rush that Plaintiff had been a licensed protective agent and investigator in Minnesota for at least eight years. (Id. at ¶ 54). The meeting became heated and ended when Defendants Tusken and Rush are asserted to have stated that they "would find or look for a way to close the business and cancelled [Plaintiff's] right to conduct business at the Twin Bar[.]" (Id. at ¶ 50). Plaintiff, later that day, maintains he sent Defendants a revised proposed security plan that did incorporate five security personnel. (Id. at ¶ 51). Plaintiff also describes hiring five contract officers from Defendant AAA to act as security personnel for the entertainment event at Twins Bar on December 19, 2013. (Id. at ¶ 52). Defendant Rush is alleged to have approved Plaintiff's second proposed security plan, but he changed it to require only four security personnel. (Id. at ¶ 53).

Plaintiff states he believed that requiring five security personnel in addition to in-house security was excessive. (Id. at 10-11, ¶ 54). Plaintiff thereafter describes trying multiple times to schedule an appointment with Defendant Ness to discuss the policy and the enforcement of it as it applied to Plaintiff. (Id. at 11, ¶ 16). Defendant Ness' assistant is alleged to have told Plaintiff that Defendant Ness did not want to meet with Plaintiff and no appointment was scheduled. (Id. at ¶ 59).

At some point, not specified in Plaintiff's original complaint, see gen., Id., Plaintiff asserts Defendants began proceedings to revoke Plaintiff's liquor license. (See Id. at 11-12, ¶¶

5

60-61). Plaintiff describes a meeting with Defendant Gardener who he maintains "refused to continue the revocation of the liquor license for a surrender of the liquor license" and who ultimately moved the city council to revoke Plaintiff's liquor license. (Id. at 11-12, ¶¶ 60-61).

Plaintiff also only conclusorily alleged in his original Complaint without any specific supporting factual allegations that the Defendants racially discriminated against him by requiring Twins Bar to pay tourism taxes before it generated $100,000 in revenue; a period in which Plaintiff alleges that Twins Bar should have been exempt from paying such taxes. (See Id. at 7, 14, ¶¶ 29, 76, 78).

Plaintiff thus alleges in a conclusory fashion that Defendants, on the basis of race, interfered with Plaintiffs enjoyment of the benefits of his liquor license, dance license, limited food license, lease for Twins Bar, and security contracts with Defendant AAA and Defendant Butler, by imposing conditions that were not imposed on Caucasian individuals and business owners. (Id. at 12-15 ¶¶ 63-83).[4] As a result, Plaintiff maintains he was driven out of business. (Id. at ¶ 71).

Plaintiff further alleged that Defendant Butler had represented to him that Defendant Butler had an agreement with Defendant Ramsey, such that, if Plaintiff hired Defendant Butler, Plaintiff would be required to use only Defendant Butler as security personnel instead of the four security personnel otherwise required. (Id. at 15, ¶¶ 86, 89). On February 12, 2013, Plaintiff states he contracted with Defendant Butler to provide security services for Twins Bar. (Id. at ¶¶ 85, 87). On the first night of his employment by Plaintiff, Defendant Butler is described as having discharged his firearm twice outside the Twins Bar, which he claimed had been in

---

[4] The only allegations of any specificity related to Defendants are that they did not allow Plaintiff to use in-house security and instead required Plaintiff to hire four or five security personnel, (¶¶ 67, 73, 76); did walkthroughs of Twins Bar in groups (¶ 67); required security calls to police (¶ 67); and required Plaintiff, as a condition imposed by the police, to pay the security personnel he hired through Defendant AAA $27.50 an hour, (¶79).

6

response to seeing people fighting outside the bar, including one who had a firearm. (Id. at ¶¶ 90-91). Plaintiff alleges no firearm was found, (Id. at ¶ 92), and that the police interviewed only Defendant Butler regarding the incident. (Id. at 16, ¶ 94). Plaintiff thus alleges again in a conclusory fashion that the actual purpose of Defendant Butler discharging his firearm was to further an agreement with Defendant Ramsey to violate Plaintiff's constitutional rights. (Id. at ¶ 96).[5]

In addition to the allegations in his original Complaint, [Docket No. 1], this Court granted Plaintiff leave to amend to assert additional factual allegations from Plaintiff's Proposed Second Amended Complaint, [Docket No. 53], when it directed Plaintiff to file an amended complaint. (August 5, 2015, Order, [Docket No. 55]).

Plaintiff alleges the following: While working at the Twins Bar on December 20, 2013, contract security officers Plaintiff had hired through Defendant AAA allegedly told the police that the security officers' marked patrol vehicle had been struck by an intoxicated driver entering the Twins Bar parking lot who had been carrying a loaded revolver. (Proposed Second Amended Complaint, [Docket No. 53], ¶ 58). The intoxicated driver threw the revolver from the vehicle as he fled from police vehicles that were in the immediate vicinity. (Id.). The officers Plaintiff hired through Defendant AAA were undercover informants for the local police and intentionally acted in bad faith to injure Plaintiff. (Id. at ¶ 64). Plaintiff's contract with Defendant AAA required Defendant AAA's officers to be directed by Plaintiff. (Id. at ¶ 65). The security officers did not report the incident to Twins Bar that night or notify Twins Bar that the security officers had reported the incident to the police. (Id. at ¶ 58). Defendant AAA involved the Duluth police in Twins Bar matters without consent from Twins Bar. (Id. at ¶ 59). The decision to involve the

---

[5] Plaintiff offers no factual allegations regarding the genesis or circumstance behind the creation or existence of such an alleged agreement.

7

police in Twins Bar matters without Twins Bar's consent violated the contract that Defendant AAA had with Plaintiff. (Id.). Defendant AAA has a policy that is contrary to the contract between Plaintiff and Defendant AAA. (Id. at ¶ 61). Defendant AAA's disclosure of confidential information about its client is contrary to Defendant AAA's written agreements. (Id. at ¶ 63). Defendant Butler breached his contract with Plaintiff when Defendant Butler discharged his firearm twice during his first night working for Plaintiff. (Id. at ¶ 66). Defendant Butler intentionally acted in bad faith to injure Plaintiff when he discharged his firearm. (Id. at ¶ 67). Defendant Butler's discharge of his firearm endangered the safety of others. (Id.).

### III. DEFENDANT AAA'S MOTION TO DISMISS, [Docket No. 44].

Defendant AAA moves the Court for an Order under Rule 12(b)(6) dismissing Plaintiff's claims against it and also awarding it attorney's fees pursuant to 42 U.S.C. § 1988.

Before the Court addresses the merits of Defendant AAA's motion to dismiss, the Court must first determine whether the motion has been rendered moot by this Court's Order, [Docket No. 55], on Plaintiff's Motion to Amend his Complaint. The grant of a motion to amend a complaint may moot a motion to dismiss that was originally directed at the complaint for which leave to amend has been granted. Onyiah v. St. Cloud State Univ., 655 F. Supp. 2d 948, 958 (D. Minn. 2009) (citations omitted). However, in certain circumstances, a court may still consider a motion to dismiss that was targeted at the original complaint even after granting a motion to amend the original complaint. See, e.g., Id. (considering motion to dismiss upon mutual request of the parties); Ireland v. Anderson, No. 3:13-CV-03, 2015 WL 1474256, at *3 (D.N.D. Mar. 31, 2015) (considering motion to dismiss in the interests of judicial economy and efficiency).

In the present case, the Court concludes that the interests of judicial economy and efficiency weigh in favor of considering Defendant AAA's Motion to Dismiss, [Docket No. 25],

even though the Court has already granted Plaintiff's Motion for Leave to Amend the Complaint. (August 5, 2015, Order, [Docket No. 55]).

Plaintiff's original Complaint, [Docket No. 1], contained two claims against Defendant AAA, namely: a 42 U.S.C. § 1983 claim that Defendant AAA violated Plaintiff's rights under the Equal Protection Clause, and a claim that Defendant AAA violated Plaintiff's rights to make and enforce contracts under 42 U.S.C. § 1981. Plaintiff abandoned his section 1983 claim based on an alleged equal protection violation when he submitted his proposed second amended complaint in which he did not re-allege that claim. See In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect."). In addition, this Court denied Plaintiff leave to add new section 1983 claims based on alleged violations of the FHA and 42 U.S.C. § 1982. (August 25, 2015, Order, [Docket No. 55]). Accordingly, the only claim against Defendant AAA that will be in the amended complaint that Plaintiff has been ordered to file and serve, is Plaintiff's claim under Count II that Defendant AAA violated his rights to make and enforce contracts under 42 U.S.C. § 1981.

The form of Plaintiff's section 1981 claim is essentially unchanged from Plaintiff's original Complaint, [Docket No. 1], to Plaintiff's Proposed Second Amended Complaint. [Docket No. 53]. As such, the arguments regarding Count II that Defendant raised in its motion to dismiss directed at the original complaint apply equally to Plaintiff's remaining section 1981 claim as it will exist in the amended complaint that Plaintiff has been ordered to file and serve pursuant to this Court's Order on Plaintiff's Motion for Leave to Amend the Complaint, [Docket No. 55].

### A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." In addressing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, "we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)). "[T]he court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations." Conley v. Gibson, 355 U.S. 41, 45–46 (1957). All reasonable inferences must be drawn in favor of the nonmoving party. See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).

As discussed above, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-67). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 664.

"Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

**B.     Analysis**

1. Motion to Dismiss

Defendant AAA moves the Court under Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's claims against it for failure to state claims upon which relief may be granted. Plaintiff's original complaint contained two claims against Defendant AAA, a section 1983 claim and a section 1981 claim. As discussed above, Plaintiff has abandoned his original section 1983 claim based on an alleged violation of the Equal Protection Clause, and Plaintiff has been denied leave to add new replacement section 1983 claims based on alleged violations of the Fair Housing Act ("FHA") and 42 U.S.C. § 1982. (August 5, 2015, Order, [Docket No. 55]). Accordingly, to the extent that Defendant AAA's Motion to Dismiss, [Docket No. 25], seeks a dismissal of Plaintiff's section 1983 claim, the Court recommends **DENYING the motion as moot**.

Defendant AAA also seeks dismissal of Plaintiff's section 1981 claim, which is essentially unchanged at between Plaintiff's original Complaint, [Docket No. 1], and the amended complaint that Plaintiff has been ordered to file and serve.

> A plaintiff establishes a prima facie case under § 1981 by showing (1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity (i.e., the making and enforcement of contracts). Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir.2004).

Daniels v. Dillard's, Inc., 373 F.3d 885, 887 (8th Cir. 2004).

Plaintiff only generally alleges that Defendant AAA entered into a contract with Plaintiff to provide security at Twins Bar, and while AAA security personnel were performing their duties under the contract, they reported to the police that one of Defendant AAA's cars had been struck

11

by an intoxicated driver who had fled the scene and had thrown a revolver out of the car when doing so. Plaintiff further conclusorily alleged that Defendant's AAA security personnel were acting as undercover informants for the police and that the security officers' decision to report the incident to the police breached Defendant AAA's contract with Plaintiff. The above factual allegations are an insufficient basis on which the Court could reasonably infer that Defendant AAA (by or through its personnel) acted with intent to discriminate against Plaintiff on the basis of race. Accordingly, Plaintiff has failed to state a plausible claim of a violation of 42 U.S.C. § 1981 on which relief may be granted.

In light of the foregoing, to the extent that Defendant AAA's Motion to Dismiss, [Docket No. 25], seeks a dismissal under Rule 12(b)(6) of Plaintiff's section 1981 claim against it in Count II, the Court recommends **GRANTING in part** the motion.

2. Attorney's Fees

Defendant AAA also seeks an award of attorney's fees with respect to the above-captioned matter. "The American Rule provides the basic point of reference for awards of attorney's fees: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Baker Botts L.L.P. v. ASARCO LLC, No. 14-103, 2015 WL 2473336, at *1 (U.S. June 15, 2015) (citation and internal quotation marks omitted). In the present case, 42 U.S.C. § 1988(b) authorizes an award of the prevailing party's reasonable attorney's fees in cases concerning 42 U.S.C. §§ 1981 and 1983.

In Hughes v. Rowe, 449 U.S. 5, 14-15 (1980), the United States Supreme Court set forth that, "[t]he fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." Id. at 14. Rather, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or

12

that the plaintiff continued to litigate after it clearly became so." Hughes, 449 U.S. at 15 (quoting Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 422 (1978)).

The Plaintiff in the present case is a *pro se* party who has attempted, in good faith, to litigate what he perceives to be violations of his rights under the complex regime of the federal civil rights statutes. Although Plaintiff has not ultimately been successful in pleading his claims against Defendant AAA, the Court does not find that Plaintiff's claims were brought with his knowledge that they were frivolous, unreasonable, or groundless. Accordingly, the Court recommends **DENYING in part** Defendant AAA's Motion to Dismiss, [Docket No. 25], to the extent the motion seeks an award of attorney's fees.

## IV. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant AAA's Motion to Dismiss, [Docket No. 25], be **GRANTED in part** and **DENIED in part**, as set forth above.

Dated: August 5, 2015                                        **s/ Leo I. Brisbois**
                                                             The Honorable Leo I. Brisbois
                                                             U.S. MAGISTRATE JUDGE

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.